[This opinion has been published in *Ohio Official Reports* at 88 Ohio St.3d 466.]

THE STATE EX REL. COMPLETE AUTO TRANSIT, INC., APPELLANT, *v*. OHIO
BUREAU OF WORKERS' COMPENSATION ET AL., APPELLEES.

[Cite as *State ex rel. Complete Auto Transit, Inc. v. Ohio Bur. of Workers'*
*Comp.*, 2000-Ohio-385.]

*Workers' compensation—Mandamus to compel Industrial Commission and Ohio*
*Bureau of Workers' Compensation to grant reimbursement from the*
*statutory Surplus Fund for payments of temporary total disability*
*compensation made by relator to a claimant—Denial of writ affirmed.*

(No. 98-1332—Submitted January 11, 2000—Decided May 24, 2000.)

APPEAL from the Court of Appeals for Franklin County, No. 97APD04-463.

_____

{¶ 1} This is an appeal from a denial of a writ of mandamus, requested by relator-appellant, Complete Auto Transit, Inc., to compel respondents-appellees, Industrial Commission of Ohio ("commission") and Ohio Bureau of Workers' Compensation ("bureau"), to grant reimbursement from the statutory Surplus Fund for payments of temporary total disability ("TTD") compensation made by appellant to claimant Arthur Proffitt from November 19, 1986 through September 6, 1991.

{¶ 2} On September 4, 1985, claimant received an injury ("low back strain, ruptured disc L4-5") in the course of, and arising out of, his employment with appellant. Appellant, a self-insured employer, fully certified the claim and, without an order from the bureau or commission, began paying TTD compensation based on reports from claimant's attending physician, B.O. Rand, M.D.

{¶ 3} In a report dated November 19, 1986, Dr. Rand opined that claimant's condition is "probably permanent and that it is unlikely that he will have further lessening of his pain." At appellant's request, claimant was then examined by Dale

E. Fox, M.D., who, in a report dated April 14, 1987, opined that claimant's condition had "become permanent in the sense that it will continue for an indefinite period without reasonable probability of recovery therefrom."

{¶ 4} On May 5, 1987, appellant filed a motion to "terminate claimant's temporary total disability compensation based upon the findings contained in Dr. Fox's report * * * as of the date of the examination by Dr. Fox, April 7, 1987." On June 26, 1989, appellant wrote the commission informing it that there had been a "two-year delay in having this motion set for hearing" and requesting "that the matter be immediately set for hearing." Between August 1989 and July 1991, appellant filed repeated requests for an immediate hearing on its May 5, 1987 motion to terminate TTD compensation.

{¶ 5} Finally, on September 6, 1991, the matter was heard by a district hearing officer ("DHO"), who found, based on the reports of Drs. Rand and Fox, that "claimant's condition is permanent having reached maximum medical recovery," and that TTD compensation "is terminated as of 9-6-91." On January 30, 1992, the Dayton Regional Board of Review modified the DHO order to the extent that TTD compensation "is terminated on 4-7-87 [the date of Dr. Fox's examination] instead of 9-6-91 [the date of the DHO hearing]."

{¶ 6} On March 4, 1992, claimant filed an appeal with the commission from the order of the regional board regarding the date on which TTD compensation should be terminated. However, while that appeal was pending, appellant wrote the commission's legal department, claiming that the regional board's order created an overpayment from April 7, 1987 to September 6, 1991, in the amount of $81,571.72, and requesting Surplus Fund reimbursement for that amount.

{¶ 7} On July 6, 1992, the commission denied appellant's request for reimbursement from the Surplus Fund on the basis that the criteria for reimbursement set forth in former R.C. 4123.515 and 4123.519 had not been met. On January 11, 1993, the commission granted claimant's appeal on the issue of

dating the termination of TTD compensation, vacated the January 30, 1992 order of the regional board, and reinstated the September 6, 1991 DHO order that terminated TTD compensation as of that date.

{¶ 8} On September 15, 1993, appellant filed a complaint for writ of mandamus in the Court of Appeals for Franklin County, seeking a writ ordering the commission to vacate its order of January 11, 1993, terminate TTD compensation as of November 19, 1986 (the date of Dr. Rand's examination of claimant), and reimburse appellant for TTD payments made from November 19, 1986 to September 6, 1991. However, on December 29, 1993, the parties filed a stipulation of dismissal without prejudice pursuant to Civ.R. 41(A), on condition that the cause be remanded to the commission "for a hearing before two Staff Hearing Officers to consider the appropriate date of termination of temporary total compensation upon a finding of permanency."

{¶ 9} On March 30, 1994, staff hearing officers found that claimant's condition "had become permanent effective 11/19/86. Therefore, Temporary Total Disability Compensation is ordered terminated at that time." On May 9, 1994, appellant again sought to have an overpayment declared, this time in the amount of $88,651.71, and to be reimbursed that amount from the statutory Surplus Fund. On July 15, 1994, the bureau's Self-Insured Department dismissed appellant's request for reimbursement on the basis that "the claim arising to reimbursement was pending as of October 20, 1993, the effective date of Am.Sub.H.B. [No.] 107." On January 18, 1996, the bureau's Self-Insured Review Panel found that appellant's "request for reimbursement from the [state] surplus fund was properly dismissed by the Bureau's Self-Insured Department." In the meantime, appellant and claimant reached a final agreement settling all claims arising from the original September 4, 1985 injury.

{¶ 10} On April 2, 1997, appellant instituted this mandamus action to compel appellees to pay the sum of $88,651.71 as Surplus Fund reimbursement for

overpaid TTD compensation from November 19, 1986 through September 6, 1991. The Court of Appeals for Franklin County denied the writ, based upon the decision of its magistrate, finding no clear legal right of appellant to Surplus Fund reimbursement under either former R.C. 4123.515 or 4123.519.

{¶ 11} The cause is now before this court pursuant to an appeal as of right.

_____

*Scott, Scriven & Wahoff, L.L.P., William J. Wahoff, Timothy E. Cowans* and *Richard Goldberg*, for appellant.

*Betty D. Montgomery,* Attorney General, and *Gerald H. Waterman*, Assistant Attorney General, for appellees.

_____

**ALICE ROBIE RESNICK, J.**

{¶ 12} The issue presented is whether appellant is entitled to Surplus Fund reimbursement under former R.C. 4123.515 and/or 4123.519 for the TTD compensation it paid to claimant subsequent to November 19, 1986.

{¶ 13} Former R.C. 4123.515 provided, in pertinent part:

"Payment of an award made pursuant to a decision of the district hearing officer in a claim shall commence twenty days after the date of the decision. * * * In all other cases, if the decision of the district hearing officer is appealed by the employer or the administrator, the bureau of workers' compensation shall withhold compensation and benefits during the course of the appeal to the regional board of review, but where the regional board rules in favor of the claimant, compensation and benefits shall be paid by the bureau or by the self-insuring employer whether or not further appeal is taken. If the claim is subsequently denied, in whole or in part, payments shall be charged to the surplus fund created under division (B) of section 4123.34 of the Revised Code, and if the employer is a state risk such amount shall not be charged to the employer's experience and if the employer is a self-

insurer such amount shall be paid to the self-insurer from the surplus fund." 143 Ohio Laws, Part II, 3353.

{¶ 14} Former R.C. 4123.519(G) provided:

"An appeal from a decision of the commission or any action filed in a case in which an award of compensation has been made shall not stay the payment of compensation under the award or payment of compensation for subsequent periods of total disability during the pendency of the appeal. In the event payments are made to a claimant which should not have been made under the decision of the appellate court, the amount thereof shall be charged to the surplus fund under division (B) of section 4123.34 of the Revised Code. In the event the employer is a state risk, the amount shall not be charged to the employer's experience. In the event the employer is a self-insurer, the amount shall be paid to the self-insurer from the surplus fund. * * *

"If a mandamus or other court action results in a final determination that the compensation or benefits in an allowed claim should not have been paid, the amount paid shall not be used in merit rating a state risk employer. If the employer is a self-insuring employer, the employer is entitled to reimbursement of the amount paid from the surplus fund created pursuant to division (B) of section 4123.34 of the Revised Code." 143 Ohio Laws, Part II, 3355-3356.

{¶ 15} As relevant here, these provisions embrace a core level requirement that payments of compensation or benefits, to be recoupable, emanate from an award made pursuant to an administrative order. Nothing in either former R.C. 4123.515 or 4123.519 authorizes reimbursement for compensation that a self-insured employer paid of its own volition.

{¶ 16} In this case, none of the compensation for which appellant seeks reimbursement was paid pursuant to an order of the bureau or commission. Appellant could have unilaterally terminated the TTD compensation it was paying to claimant on November 19, 1986, the date that Dr. Rand reported claimant's

condition to be "probably permanent." "Nothing in former R.C. 4123.56 requires a self-insured employer to seek a hearing before terminating the temporary total disability compensation of a claimant *whose own doctor* does not believe that the claimant is temporarily and totally disabled." (Emphasis *sic*.) *State ex rel. Jeep Corp. v. Indus. Comm.* (1991), 62 Ohio St.3d 64, 66, 577 N.E.2d 1095, 1097.

{¶ 17} Appellant argues, however, that it did not unilaterally terminate claimant's TTD based on Dr. Rand's report because commission policy at that time required self-insurers to continue paying TTD compensation until the commission held a hearing and ordered termination. Appellant asserts that this policy was in effect on November 19, 1986, and remained in effect until it was invalidated in 1991 by our decision in *Jeep Corp.* Appellant then argues that our decisions in *State ex rel. Eaton Corp. v. Lancaster* (1988), 40 Ohio St.3d 404, 534 N.E.2d 46, reconsidered and modified (1989), 44 Ohio St.3d 106, 541 N.E.2d 64, and *State ex rel. Peabody Coal Co. v. Indus. Comm.* (1989), 44 Ohio St.3d 104, 541 N.E.2d 74, recognized, or at least did not rule out, Surplus Fund reimbursement for payments made pursuant to a void commission policy rather than pursuant to an overturned administrative order.

{¶ 18} We reject these arguments for the following reasons. First, appellant decided not to unilaterally terminate claimant's TTD compensation based on Dr. Rand's statement of permanency sometime between November 19, 1986, the date of Dr. Rand's report, and the time appellant scheduled claimant to be examined by Dr. Fox on April 7, 1987. However, the commission policy statement that appellant claims to have relied upon in making this decision is dated January 1, 1989.

{¶ 19} Second, the January 1, 1989 policy statement does not prohibit a self-insured employer from unilaterally terminating a claimant's TTD compensation upon the attending physician's declaration of permanency. In fact, there is nothing in that policy statement that purports to address the issue of

6

whether, and under what circumstances, a self-insured employer is required to seek a termination hearing.[1]

{¶ 20} Third, our decision in *Jeep Corp.* does not support appellant's claim that there was a commission policy in effect from November 19, 1986 through September 6, 1991, requiring a self-insured employer to seek a hearing before terminating the TTD compensation of a claimant whose own physician has declared claimant's condition permanent. Although we certainly rejected the commission's claim that a pre-termination hearing is required under these circumstances, *id.*, 62 Ohio St.3d at 66, 577 N.E.2d at 1097, there is nothing in *Jeep Corp.* that even remotely suggests that the commission's claim in that case was related to an ongoing five-year policy.

{¶ 21} Last, our decisions in *Eaton* and *Peabody* do not support the use of the statutory Surplus Fund to reimburse a self-insured employer for amounts paid pursuant to reliance upon purported commission policy. In both cases, the continued payments of TTD compensation for which we granted reimbursement were administratively *ordered* despite a finding of permanency. Prior to *Eaton* and *Peabody*, we stated that "[a] proper reading [of former R.C. 4123.515] indicates that funds are not recoupable until paid pursuant to a regional board order." *State ex rel. DeLong v. Indus. Comm.* (1988), 40 Ohio St.3d 345, 348, 533 N.E.2d 729, 731. Subsequent to *Eaton* and *Peabody*, we again stated that "[f]ormer R.C. 4123.515 provided that self-insured employers receive reimbursement from the Surplus Fund for compensation *paid on order* of a regional board of review '[i]f

---

1. The January 1, 1989 policy statement cited by appellant provides, in its entirety:

"If the decision of a district hearing officer is to terminate temporary total disability compensation on claims with injuries prior to August 22, 1986, or dates of disability in occupational disease claims prior to August 22, 1986, the appropriate date of termination is the date of hearing, except in those cases where a claimant has actually returned to work or where fraud is found.

"The termination of temporary total disability will not be retroactively applied or prospectively applied by hearing officers. The fact that the BWC or the self-insured employer has previously extended temporary total disability beyond the date of hearing is not relevant."

the claim is subsequently denied, in whole or in part.' " (Emphasis added.) *State ex rel. Roadway Express v. Indus. Comm.* (1998), 82 Ohio St.3d 510, 514, 696 N.E.2d 1064, 1068. Thus, *Eaton* and *Peabody* do not represent a departure from our consistent interpretation of former R.C. 4123.515 as requiring reimbursable payments to emanate from an administrative order.

{¶ 22} Appellant also argues that its 1993 mandamus action resulted in a final determination that TTD compensation should not have been paid after November 19, 1986, and, therefore, it is entitled to Surplus Fund reimbursement under the second paragraph of former R.C. 4123.519(G). However, appellant's 1993 mandamus action did not result in a final determination, as it was dismissed pursuant to Civ.R. 41(A)(1). Moreover, even if that dismissal could somehow be construed to have resulted in a final determination, it did not overturn any prior award of compensation. As we indicated above, none of the compensation for which appellant seeks reimbursement was paid on order of the bureau or commission.

{¶ 23} Appellant's final argument is that appellees are equitably estopped from denying appellant's claim for reimbursement because they prohibited appellant from unilaterally terminating claimant's TTD compensation upon the attending physician's declaration of permanency, and then took over four years to hold a hearing on appellant's motion to terminate.

{¶ 24} We agree with appellant that the commission's delay of almost four and one-half years in scheduling a hearing on appellant's May 5, 1987 motion to terminate is entirely inexcusable and unacceptable. This delay penalizes a self-insured employer for continuing payments of TTD compensation. We wish that there were some way to grant appellant's request for Surplus Fund reimbursement, but in view of the statutes there is not. Appellant could have unilaterally terminated claimant's TTD compensation at any time after November 19, 1986, the date that claimant's attending physician declared claimant's condition "probably

8

permanent." The January 1, 1989 policy on which appellant purportedly relied did not prohibit unilateral termination or require appellant to seek the hearing that was interminably delayed. Under these circumstances, the element of reasonable reliance necessary to invoke the doctrine of equitable estoppel is lacking. See *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 145, 555 N.E.2d 630, 633.

{¶ 25} In accordance with all of the foregoing, appellant is not entitled to a writ ordering appellees to grant Surplus Fund reimbursement, and the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., F.E. SWEENEY and COOK, JJ., concur.

DOUGLAS, J., dissents.

PFEIFER and LUNDBERG STRATTON, JJ., dissent.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶ 26} I believe that our interpretation not only unjustly deprives Complete Auto Transit, Inc. of reimbursement from the state's Surplus Fund for compensation made by appellant to claimant Arthur Proffitt from November 19, 1986 through September 6, 1991, but it also sends a wrong message to employers. Instead of encouraging them to continue payments to an injured worker until a court order finds such payments no longer necessary, our decision almost directs them to unilaterally stop payment when the attending physician declares permanency or else lose all rights to reimbursement.

{¶ 27} Appellant was not responsible for the inexcusable four-and-one-half-year delay by the commission to hold a hearing. It should not now be punished for treating its own employee fairly while waiting out government bureaucracy.

{¶ 28} For these reasons, I respectfully dissent.

PFEIFER, J., concurs in the foregoing dissenting opinion.